UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALLION HEALTHCARE, INC., MOMS
PHARMACY, INC. and MOMS PHARMACY
OF BROOKLYN, INC.,

                         Plaintiffs,

                  -against-

ARCH INSURANCE COMPANY, and ARCH
SPECIALTY INSURANCE COMPANY,

                         Defendants.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ SEP 23 2014 ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 14-0147

(Wexler, J.)

APPEARANCES:

    BEGOS BROWN & GREEN LLP
    BY:   PATRICK W. BEGOS, ESQ.
    Attorneys for Plaintiff
    2425 Post Road
    Southport, Connecticut 06890

    GOLDBERG SEGALLA LLP
    BY:   JOSEPH A. OLIVA, ESQ.
            JILL C. OWENS, ESQ.
    Attorneys for Defendants
    600 Lexington Avenue, Suite 900
    New York, New York 10022

WEXLER, District Judge:

       Before the Court is Defendants' motion to dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Plaintiffs oppose the motion. For the following reasons, Defendants' motion is denied.

## BACKGROUND

Plaintiff, Allion Healthcare, Inc. ("Allion"), is a national provider of specialty pharmacy and disease management services who, through its subsidiaries, Plaintiff MOMS Pharmacy, Inc. ("MOMS") and Plaintiff MOMS Pharmacy of Brooklyn, Inc. ("MOMS Brooklyn"), sold HIV/AIDS medications, ancillary drugs and nutritional supplies. (Compl. ¶¶ 1-4.) Both MOMS and MOMS Brooklyn were dissolved in late 2013. (Compl. ¶¶ 2-3.) Allion is now known as Biomed Healthcare Holdings, Inc. (Compl. ¶ 1.)

Defendants Arch Insurance Company and Arch Specialty Insurance Company (collectively, "Arch") issued to Allion "Corporate Canopy Policy Private Company Management Liability & Crime Insurance," which was subsequently renewed, with policy periods from February 1, 2011 to February 1, 2013 (the "Corporate Canopy Policies"). (Compl. ¶ 10.) The Corporate Canopy Policies included coverage for Directors, Officers & Organization Liability (the "D&O Part"), Employment Practices Liability, Fiduciary Liability and Crime (the "Crime Part"), with limits of liability ranging from $5,000,000 to $10,000,000. (Compl. ¶ 12.)

Arch also issued to Allion a liability policy, which was subsequently renewed, with policy periods from August 5, 2010 to January 13, 2013 (the "Liability Policies"), which included coverage for Healthcare Professional Liability and Healthcare General Liability. (Compl. ¶¶ 13-14.) The limits of liability under these policies were $6,000,000. (Compl. ¶ 14.)

This action arises out of a dispute over insurance coverage for crimes allegedly perpetrated by a former employee of Allion, Glenn Schabel ("Schabel"), which included, inter alia, the diversion of prescription pharmaceuticals and for which Schabel was arrested and indicted in April 2012, following an investigation by the New York State Attorney General.

(Compl. ¶¶ 15-18.) In a First Amended Complaint dated April 4, 2012 (the "AG Complaint"), the New York Attorney General named fourteen criminal defendants, including Schabel, and ten civil defendants, including Allion, MOMS and MOMS Brooklyn and alleged that Schabel had purchased more than $250,000,000 in pharmaceuticals on behalf of Allion that had been "diverted" or obtained outside legitimate streams of commerce. (Compl. ¶ 22.) The AG Complaint further alleged that Schabel would then dispense the diverted prescription medications to customers of Allion, the majority of whom are Medicaid recipients. (Compl. ¶ 25.) The AG Complaint asserted claims against Allion for, inter alia, claiming and or obtaining reimbursement from Medicaid for the diverted pharmaceuticals that were allegedly ineligible for reimbursement because they were obtained outside legitimate streams of commerce. (Compl. ¶ 28.)

In connection with the New York Attorney General's investigation, the New York State Supreme Court for Suffolk County in January 2012 issued a search warrant for Allion's premises in Melville, New York, as well as a temporary restraining order preventing Allion from transferring any real or personal property and an ex parte order of attachment in the amount of $155,344,818. (Compl. ¶ 19.) During the execution of the search warrant, the New York Attorney General seized from Allion several million dollars in pharmaceuticals and served grand jury subpoenas on Allion. (Compl. ¶ 20.)

Beginning in February 2012, Allion provided Arch with notice and a proof of claim regarding Schabel's crimes and the New York Attorney General's action, requesting coverage, defense and/or indemnification under both the Corporate Canopy Policies and the Liability Policies. (Compl. ¶ 30.) Arch rejected Allion's claims, asserting that neither the Corporate Canopy Policies nor the Liability Policies provided any coverage, defense or indemnification.

(Compl. ¶ 31.)

In or about June 2012, Allion entered into an agreement with the New York Attorney General whereby substantially all assets of MOMS and MOMS Brooklyn were sold on an expedited basis at an amount substantially less than they were worth, with a significant portion of the proceeds from the sale paid to the New York Attorney General. (Compl. ¶¶ 32-33.) As part of the agreement, the New York Attorney General released Allion from any claims, including those alleged in the AG Complaint, and agreed that it would not prosecute Allion for any alleged criminal conduct related to its investigation. (Compl. ¶ 34.)

Allion commenced the within diversity action on January 8, 2014, alleging claims for breach of contract by Arch under both the Corporate Canopy Policies and the Liability Policies. Allion further asserts a claim for breach of Arch's duty to defend Allion. Arch now moves to dismiss Allion's Complaint on the grounds that there is no coverage under any of the insurance policies issued to Allion.

## DISCUSSION

I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). As a general rule, the

court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal,129 S. Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 557).

II.   Breach of Contract

To state a claim for breach of contract under New York law, a complaint must set forth the following elements: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Gutt v. Nassau Health Care Corp., No. 04CV57, 2005 U.S. Dist. LEXIS 38775, at *15 (E.D.N.Y. Mar. 15, 2005) (quoting First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)). A plain reading of Allion's Complaint clearly sets forth these elements. The issue that Arch advances in its motion to dismiss, however, is that the underlying insurance contracts do not provide coverage for the losses Allion alleges to have incurred. Allion disagrees.

"Under New York law, 'the initial interpretation of a contract is a matter of law for the court to decide.'" Maniolos v. United States, 741 F. Supp. 2d 555, 566 (S.D.N.Y. 2010) (quoting

Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998)) (additional citations omitted). Such an interpretation includes whether or not the terms of the contract are ambiguous. See Maniolos, 741 F. Supp. 2d at 566; see also W.W.W. Assoc., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts.").

"Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." Maniolos, 741 F. Supp. 2d at 567 (collecting cases). Where the language of a contract is ambiguous, however, "its construction presents a question of fact, which of course precludes summary dismissal." Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007).

A contract's language is considered ambiguous "if it is reasonably susceptible to more than one meaning." Maniolos, 741 F. Supp. 2d at 567 (citing Chimart Assoc. v. Paul, 66 N.Y.2d 570, 573 (1986)) (additional citations omitted). Conversely, a contract is deemed unambiguous if it has a "definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (citation omitted). Contract language "is not made ambiguous simply because the parties [to the litigation] urge different interpretations." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 598 (2d Cir. 2005).

In determining the within motion, the Court has reviewed the underlying insurance policies, which are incorporated into the Complaint by reference. See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit

or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."). After such review, the Court determines that both the Corporate Canopy Policies and the Liability Policies are ambiguous. Specifically, with respect to the Crime Coverage portion of the Corporate Canopy Policy, the Court finds that whether Schabel committed a "theft" within the terms of the insurance policy is a question of fact because the terms of the policy are open to differing interpretations. The same is true of whether the alleged "wrongful acts" for which Allion seeks coverage are interrelated, which will determine whether coverage under the D&O portion is precluded as of a certain date. Similar factual issues exist with respect to the contract language contained in the Liability Policies. As a result, dismissal of the action is unwarranted at this time. Arch may revisit the issues raised in its motion to dismiss on a motion for summary judgment following the close of discovery.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint is denied in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
September 23, 2014

s/ Leonard D. Wexler

LEONARD D. WEXLER
United States District Judge